UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
JAN 9 2026
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

MATTHEW W. FLUTY,

Plaintiff,

v.

COMMISSIONER OF MENTAL HEALTH FOR THE NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION JANE/JOHN DOE, in his or her individual and official capacities; ATTICA CORRECTIONAL FACILITY MENTAL HEALTH PROVIDER JANE DOE, in her individual capacity; GREEN HAVEN CORRECTIONAL FACILITY OFFICER JOHN DOES ##1-4, in their individual capacities; and COXSACKIE CORRECTIONAL FACILITY SUPERINTENDENT, AREA S.G.T.s, and CORRECTIONAL OFFICER JANE/JOHN DOES, in their individual capacities,

Defendants.[1]

25-CV-1446-LJV
ORDER

The pro se plaintiff, Matthew W. Fluty, is a prisoner confined at the Attica Correctional Facility. He asserts claims under 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights when he was incarcerated at the Green Haven, Coxsackie, and Attica Correctional Facilities ("Green Haven," "Coxsackie," and "Attica", respectively), as well as at the Rensselaer County Jail ("RCJ"). Docket Item 1. He also has moved to proceed in forma pauperis (that is, as a person who should have the prepayment of the ordinary filing fee waived because he cannot afford it), Docket

[1] The Clerk of the Court shall amend the caption as set forth above.

Item 2, and for an "emergency injunction" that would provide him with a previously prescribed mental health medication. Docket Item 3.

For the reasons that follow, the Court conditionally grants Fluty's motion for in forma pauperis status. Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), the Court screens the complaint. Fluty's official capacity claim seeking money damages against the Jane/John Doe Commissioner of Mental Health ("Mental Health Commissioner") for the New York State Department of Corrections and Community Supervision ("DOCCS") is dismissed. Fluty's claims arising from his confinement at Attica may otherwise proceed to service against the Mental Health Commissioner and Jane Doe Attica mental health provider. His remaining claims will be severed and transferred to the Southern and Northern Districts of New York. The New York State Attorney General shall respond to the motion for an emergency injunction within 14 days.

## **DISCUSSION**

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the complaint (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2).

Generally, the court will afford a pro se plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A pro se complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (italics omitted) (quoting *Gomez*, 171 F.3d at 795)). But leave to amend pleadings may be denied when any amendment would be "futile." *Cuoco*, 222 F.3d at 112.

## I. SCREENING THE COMPLAINT

In evaluating the complaint, the court accepts all factual allegations as true and draws all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Although "a court is obliged to construe [pro se] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a pro se complaint "must plead 'enough facts to state a claim to relief that is plausible on its face,'" *Shibeshi v. City of New York*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, although a pro se complaint need not provide every last detail in support of a claim, it must allege some

facts that support the claim. *See id.* (concluding that district court properly dismissed pro se complaint under section 1915(e)(2) because complaint did not meet pleading standard in *Twombly* and *Iqbal*). And even pro se pleadings must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004), and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

Fluty's complaint raises claims against defendants at three DOCCS facilities—Green Haven, Coxsackie, and Attica—as well as claims based on Fluty's incarceration at RCJ before he entered DOCCS custody in November 2023. A liberal reading of the complaint tells the following story.

Before Fluty was in DOCCS custody—more specifically, while he was being held at RCJ in 2022—Provigil, a mental health medication, was prescribed for him. *Id.* at ¶ 7. Fluty was twice placed in "isolation" at RCJ, which "further eroded [his] mental health." *Id.* at ¶ 8.[2] His first placement in a "RHU [Restrictive Housing Unit] was illegal"; the second time, "they pretended [that he] was a threat to staff safety" and placed him in administrative segregation "without cause." *Id.* While in the mental health unit, Fluty was not "allowed [his] medication." *Id.*

Fluty also was assaulted in the mental health unit. He "complied [with] all [of] their comands [sic]" but "was still pepper sprayed[,] hand cuffed[,] and beaten before leaving the cell." *Id.* at ¶ 4. Fluty then was taken to a shower, where he "was assaulted

[2] The Court has modified the capitalization used in the complaint.

again" by Correctional Officer Biette ("Biette"), "who bashed [his] head against the steel shower . . . until other officers pulled [Biette] off of [him]." *Id.*

Biette and "five other officers[ ] stripped [him] naked and 'mock[']sexually assaulted [him] after he went before the Judge for [his] new case." *Id.* at ¶ 5. From January through March of 2023, Fluty was "assaulted, pepper sprayed[,] and tazered [sic] for any reason[ ] they could make up." *Id.* He eventually pleaded guilty "to get out of the eight months[ ] of 'Isolation.'" *Id.* [3]

In November 2023, Fluty arrived at Green Haven from RCJ "for processing." *Id.* at ¶ 3. Four John Doe Correctional Officers cleared the bullpen and their leader said, "so you try to kill cops." *Id.* Fluty then was slapped in the mouth twice and ordered to the shower where the officers "took turns taking shots at [his] body for around ten minutes." *Id.* "[T]o 'coverup' [sic] the assault," Fluty was "denied proper medical care." *Id.* at ¶ 29 (emphasis omitted).

Fluty was transferred to Coxsackie and incarcerated there from February 11 to May 1, 2024. *Id.* at ¶¶ 1, 2. After being falsely charged with starting a fire, Fluty was subjected to a "continuous unlawful keeplock order" for 75 days. *Id.* at ¶ 2. While in keeplock, he was provided "with a single pair of clothes" and forced to use a shower that had black mold and only cold water. *Id.*

---

[3] Fluty alleges that the denial of his prescribed mental health medication has "handicap[ped] [his] efforts to explain [his] situation." Docket Item 1 at ¶ 8. As best the Court can discern, the events alleged in paragraphs 4 and 5 of the complaint transpired at the RCJ. *Id.* at ¶ 8 (while on a mental health unit in RCJ, Fluty was denied a "tablet to talk to [his] family about the situation with Officer Biette").

At Coxsackie, Fluty again was denied Provigil "without medical justification." *Id.* at ¶¶ 6-7. He was told that they would not "fill the script." *Id.* at ¶ 7. In protest, Fluty remained on a hunger strike for 22 days. *Id.* at ¶ 1.

After Fluty's transfer to Attica in May 2024, both the Mental Health Commissioner and Jane Doe Attica mental health provider received Fluty's mental health records but still denied him his prescribed mental health medication. *Id.* at ¶¶ 10, 27, 28. Fluty also has talked with an individual associated with the Assistant Commissioner for Health Services for DOCCS, who gave him "her word they would fill [his] script." *Id.* at ¶ 6. Despite that promise, Fluty continues to "suffer[ ] day after day without [his] medication." *Id.* At each mental health call out at Attica, Fluty has been told that "they don't prescribe 'Provigil medication.'" *Id.* at ¶ 8.

Fluty asserts Eighth Amendment claims against: (1) the Mental Health Commissioner and Jane Doe Attica mental health provider for deliberate indifference to his mental health needs; (2) Green Haven John Doe officers #1-4 for excessive force and deliberate indifference to his medical needs; and (3) the Coxsackie Jane/John Does for the conditions of his keeplock confinement. *Id.* at ¶¶ 27-30.[4] He seeks money damages in connection with each of his claims. *Id.* at ¶¶ 31-34.

---

[4] These are the claims expressly identified. The Court does not construe the complaint as asserting any additional claims arising from Fluty's confinement at Attica. *See Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest). To the extent the complaint may be liberally interpreted to include other claims arising from his confinement at Green Haven, Coxsackie, or RCJ, the Court will leave it to the transferee districts to identify any additional claims.

## II. SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S at 676). Moreover, the theory of respondeat superior is not available in a section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618.

Section 1983 suits can be brought against government officials in both their official and individual capacities. As the Second Circuit has explained, "[i]n an official capacity suit, 'the real party in interest is the governmental entity and not the named official.'" *Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018) (alteration omitted) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)), *aff'd*, 592 U.S. 43 (2020). "By contrast, individual capacity suits 'seek to impose individual liability upon [ ] government officer[s] for actions under color of law.'" *Id.* (alterations omitted) (quoting *Hafer*, 502 U.S. at 25). Fluty's claims are brought against the defendants in their individual capacities. *See*

Docket Item 1. The Mental Health Commissioner also is sued in her official capacity. *Id.*

## III. IN FORMA PAUPERIS STATUS

A party commencing a civil action in this Court ordinarily must pay a $350.00 filing fee as well as a $55.00 administrative fee.[5] *See* 28 U.S.C. § 1914; Judicial Conference Schedule of Fees, District Court Miscellaneous Fee Schedule;[6] Western District of New York, District Court Schedule of Fees.[7] If a "prisoner" (as defined in 28 U.S.C. § 1915(h)) wishes to commence a civil action, the prisoner must either (1) pay those fees or (2) obtain permission to proceed in forma pauperis under 28 U.S.C. § 1915.

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996), which amended 28 U.S.C. § 1915, established certain requirements that a prisoner must meet in order to proceed in forma pauperis. Those requirements are summarized below.

---

[5] Effective May 1, 2013, the Judicial Conference of the United States added an administrative fee of $50.00 to the cost of filing a civil lawsuit in district court. *See* September 2012 Report of the Proceedings of the Judicial Conference of the United States ("September 2012 Report"), available at http://www.uscourts.gov/about-federal-courts/reports-proceedings-judicial-conference-us. Effective December 1, 2023, this fee was increased to $55.00. *See* https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. But this additional administrative fee does not apply to prisoners who are granted permission to proceed in forma pauperis. *See generally* September 2012 Report.

[6] Available at http://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

[7] Available at http://www.nywd.uscourts.gov/fee-schedule.

**A. Supporting Affidavit or Affirmation**

Under 28 U.S.C. § 1915(a)(1), a prisoner seeking to bring a civil action in forma pauperis must submit an affidavit or affirmation detailing the prisoner's assets and liabilities and swearing under oath that the prisoner is unable to pay the $350.00 filing fee. A motion to proceed in forma pauperis should be supported by such an affidavit or affirmation filed at the same time as the complaint. The United States District Court for the Western District of New York has made available a form motion to proceed in forma pauperis with supporting affirmation that is designed to help pro se litigants (such as Fluty) comply with 28 U.S.C. § 1915(a)(1). Fluty submitted the required affirmation. Docket Item 2.

**B. Authorization Form**

A prisoner seeking to proceed in forma pauperis also must submit a signed authorization form permitting the institution in which the prisoner is confined to pay—over time, if necessary—the $350.00 filing fee from the prisoner's trust fund account (or institutional equivalent). *See* 28 U.S.C. § 1915(b)(1)-(4). In other words, even if the prisoner is granted in forma pauperis status, the prisoner still must pay the full $350.00 filing fee in installments. *See* 28 U.S.C. § 1915(b)(1)-(2). The initial payment will be 20% of the average monthly deposits to the prisoner's account or 20% of the average monthly balance in the prisoner's account for the six-month period immediately preceding the filing of the complaint, whichever is greater. *See* 28 U.S.C. § 1915(b)(1). For each month after that, as long as the amount in the prisoner's account exceeds $10.00, the agency having custody of the prisoner will deduct from the prisoner's account and forward to the Clerk of the Court an installment payment equal to 20% of

the preceding month's income that was credited to the prisoner's account. *See* 28 U.S.C. § 1915(b)(2). Those payments continue until the $350.00 fee is paid in full. *Id.* Fluty submitted the required authorization. Docket Item 4.

**C. Certification of Inmate Trust Fund Account**

Under 28 U.S.C. § 1915(a)(2), a prisoner seeking to proceed in forma pauperis also must submit a certified copy of his or her inmate trust fund account statement (or an institutional equivalent) for the six months immediately before the prisoner's complaint was filed. The prisoner must obtain this certified account statement from the appropriate official at each correctional facility where the prisoner was confined during that six-month period. *See* 28 U.S.C. § 1915(a)(2). Alternatively, the prisoner may have prison officials complete and sign the "Prison Certification Section" of the Court's form motion.[8] In the "Prison Certification Section," prison officials provide the information in the prisoner's trust fund account statement required by 28 U.S.C. § 1915(a)(2). Fluty states in his supporting affirmation that he has $16.00 in his inmate account, Docket Item 2 at ¶ 7, **but he did not submit the required certification.**

Despite this deficiency, the Court deems it appropriate to conditionally grant Fluty's application to proceed in forma pauperis. This will permit the Court to address the allegations of the complaint and the motion for an emergency injunction without undue delay. *See Jackson v. Grondolsky*, 2011 WL 13704, at *1 (D.N.J. Jan. 3, 2011) (noting that the plaintiff was granted conditional IFP status "in light of his allegations that he was swiftly going blind due to an alleged denial of medical care").

[8] The Clerk of the Court shall mail Fluty a form motion to proceed in forma pauperis. The form also is available at http://www.nywd.uscourts.gov/pro-se-forms.

**Within 21 days, Fluty shall submit either (a) the required certification of his inmate trust fund account (or the institutional equivalent) or (b) the $350.00 filing fee and the $55.00 administrative fee ($405.00 total).** Failure to do so may result in the revocation of Fluty's conditional in forma pauperis status and dismissal of the complaint without prejudice.

## IV. SEVERANCE AND TRANSFER

In addition to asserting claims that arose while he was confined at Attica, Fluty asserts claims arising from his confinement at Green Haven, Coxsackie, and RCJ.[9] Green Haven is located in Dutchess County, New York, which is within the geographical confines of the Southern District of New York, *see* 28 U.S.C. § 112(b); Coxsackie is located in Greene County in the Northern District of New York, *see* 28 U.S.C. § 112(a); and RCJ is in Rensselaer County, also in the Northern District, *see id.*

Rule 21 of the Federal Rules of Civil Procedure provides that a court "on its own, . . . may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." When deciding whether to sever, courts consider:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were

[9] The complaint includes several allegations concerning Fluty's confinement at RCJ, but it does not expressly identify any associated claims or defendants in the caption or list of parties. In deference to Fluty's pro se status, the Court will address the severance and transfer of the potential claims arising from his confinement at RCJ. *See Khan v. Martuscello*, 2025 WL 2399054, at *2 n.5 (N.D.N.Y. Aug. 19, 2025) (severing and transferring "potential claims" arising from plaintiff's confinement at Rikers Island and Green Haven when plaintiff made allegations concerning his confinement at those facilities but did "not identify any individuals associated with [those facilities] as defendants in the caption or list of parties").

> granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*N. Jersey Media Grp., Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114 (S.D.N.Y. 2015) (quoting *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 502-03 (S.D.N.Y. 2013)).

"A claim may be severed based upon lack of a significant relationship between defendants or solely for the purpose of facilitating transfer. Where the administration of justice would be materially advanced by severance and transfer, a court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against other defendants." *Cain v. N.Y. State Bd. of Elections*, 630 F. Supp. 221, 225-26 (E.D.N.Y. 1986) (citations omitted). "The decision whether to sever a party or claim from an action is within the broad discretion of the district court." *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y.1995).

Here, the excessive force incidents at Green Haven and RCJ and the conditions of Fluty's segregated confinements at Coxsackie and RCJ are separate and distinct from the alleged deliberate indifference to Fluty's mental health needs and will largely require different witnesses and documentary proof. For those reasons and in consideration of the above factors, the Court severs Fluty's claims arising at Green Haven and Coxsackie, as well as any potential claims arising from his confinement at RCJ, from the remainder of this action.

The Court next must decide whether to transfer the severed claims. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). A district court may transfer an action

sua sponte. *See Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n.17 (2d Cir. 1979) (observing that "[t]he broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer [s]ua sponte" (citation omitted)).

The claims arising from the events at Green Haven initially could have been brought in the Southern District of New York, and those arising from the incidents at Coxsackie and RCJ could have been brought in the Northern District. *See* 28 U.S.C. § 1391(b) (a civil action may be commenced in a "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). Therefore, deciding whether to transfer depends on:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Steck v. Santander Consumer USA Inc.*, 2015 WL 3767445, at *2 (S.D.N.Y. June 17, 2015) (quoting *Ritchie Capital Mgmt., L.L.C. v. U.S. Bank Nat. Ass'n*, 2015 WL 1611391, at *4 (S.D.N.Y. Apr. 10, 2015)).

The defendants likely reside in the districts where they are employed—the Southern District for the four John Doe Green Haven defendants and the Northern District for the Jane/John Doe Coxsackie defendants. Those districts are also where the respective claims arose and where the relevant witnesses and evidence almost certainly are located. Accordingly, the Court will transfer the Green Haven claims and

defendants to the Southern District of New York and the Coxsackie claims and defendants to the Northern District of New York.

The same holds true for claims arising from Fluty's confinement at RCJ. The defendants would likely be Biette and other RCJ employees who reside in the Northern District. Any potential claims also would have arisen in the Northern District, the likely location of the relevant witnesses and evidence. The allegations and any potential claims concerning Fluty's confinement at RCJ are therefore transferred to the Northern District.

**Severance and transfer will be deferred, however, until Fluty submits the required certification of his inmate trust fund account (or the institutional equivalent) or pays the filing fee as set forth above.**

## V. OFFICIAL CAPACITY CLAIMS

The Eleventh Amendment "precludes suits against states unless the state expressly waives its immunity or Congress abrogates that immunity." *Li v. Lorenzo*, 712 F. App'x 21, 22 (2d Cir. 2017) (summary order) (citing *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 94-95 (2d Cir. 2002)). A claim for money damages under section 1983 against a state official in his or her official capacity "is in effect a claim against the governmental entity itself." *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Therefore, because "New York has not waived its immunity, nor has Congress abrogated it," *Li*, 712 F. App'x at 22 (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990)), the Eleventh Amendment bars official-capacity suits for money

damages against New York State and its officials in their official capacities, *see Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Fluty has sued the Mental Health Commissioner under section 1983 for money damages in both her official and individual capacities. *See* Docket Item 1. Because Fluty's official-capacity claims for money damages are barred by the Eleventh Amendment, they are dismissed without leave to amend because any amendment would be "futile." *See Cuoco*, 222 F.3d at 112.

## VI. DELIBERATE INDIFFERENCE

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Every deliberate indifference claim must satisfy an objective and a subjective component: 'First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the defendant must act with a sufficiently culpable state of mind.'" *Rodriguez v. Gusman*, 2023 WL 219203, at *1 (2d Cir. Jan. 18, 2023) (quoting *Chance*, 143 F.3d at 702).

"[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (alterations in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "'[A]n official's failure to alleviate a significant risk that he should have perceived but did not' does not meet this standard." *Id.* (alteration

in original) (quoting *Farmer*, 511 U.S. at 838); *see also Rodriguez*, 2023 WL 219203, at *1 ("The defendant must have been actually aware of a substantial risk that serious inmate harm would result." (citation modified)).

The complaint raises a colorable claim for deliberate indifference to Fluty's mental health needs in violation of his Eighth Amendment rights. Fluty alleges that he previously was prescribed Provigil, that the defendants knew that he needed that mental health medication, and that the defendants nevertheless denied it without medical justification. Docket Item 1 at ¶¶ 6-8,10. At this stage of the case, those allegations plausibly suggest that the Mental Health Commissioner and Jane Doe Attica mental health provider were aware of, and deliberately indifferent to, Fluty's serious medical need.

## VII. MOTION FOR AN EMERGENCY INJUNCTION

Fluty also has moved for an injunction seeking to resume his prescription for Provigil. Docket Item 3 at 1-2. The Court interprets this as a request for a temporary restraining order and preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. *See Triestman*, 470 F.3d at 474 (submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest).

Because the Court anticipates that the Mental Health Commissioner and Jane Doe Attica mental health provider will be represented by the New York State Attorney General, **the Clerk of the Court shall email the complaint, the motion for an emergency injunction, and this order to the Assistant Attorney General in charge of the Buffalo regional office.** Given the serious questions raised about Fluty's well-

being, **the Attorney General shall respond to the motion within 14 days of the date of this order.**

## CONCLUSION

For the reasons stated above, the Court conditionally grants Fluty's motion to proceed in forma pauperis. Docket Item 2. Fluty's official capacity claim seeking money damages against the Mental Health Commissioner is dismissed without leave to amend. His claims arising from his confinement at Attica may otherwise proceed to service against the Mental Health Commissioner and Jane Doe Attica mental health provider. Upon Fluty's submission of the required certification of his inmate trust fund account (or the institutional equivalent) or payment of the filing fee, his remaining claims will be severed and transferred to the Southern and Northern Districts of New York as addressed above.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that Fluty's motion to proceed in forma pauperis, Docket Item 2, is CONDITIONALLY GRANTED; and it is further

ORDERED that the Clerk of the Court shall mail Fluty a form motion to proceed in forma pauperis; and it is further

ORDERED that Fluty's official capacity claim seeking money damages against Jane/John Doe Commissioner of Mental Health for the New York State Department of Corrections and Community Supervision is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2) without leave to amend; and it is further

ORDERED that **within 21 days of this order,** Fluty shall submit either (a) the required certification of his inmate trust fund account (or the institutional equivalent), or (b) the $350.00 filing fee and the $55.00 administrative fee ($405.00 total). Failure to do so may result in the revocation of Fluty's conditional in forma pauperis status and dismissal of the complaint without prejudice; and it is further

ORDERED that upon Fluty's submission of either the (a) required certification of his inmate trust fund account (or the institutional equivalent) or (b) $350.00 filing fee and the $55.00 administrative fee ($405.00 total), the Clerk of the Court shall: (1) sever the Green Haven Correctional Facility Officer John Does #1-4 from this action and transfer all claims alleged against them to the Southern District of New York; (2) sever the Coxsackie Correctional Facility Superintendent, Area S.G.T.s (Sergeants), and Correctional Officer Jane/John Does from this action and transfer all claims alleged against them to the Northern District of New York; and (3) sever all allegations and any potential claims from Fluty's confinement at the Rensselaer County Jail from this action and transfer them to the Northern District of New York; and it is further

ORDERED that pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (1997) (per curiam) the Attorney General's Office shall ascertain the full name, with correct spelling, and last known service address of the Jane/John Doe Commissioner of Mental Health for the New York State Department of Corrections and Community Supervision and Jane Doe Attica mental health provider within 14 days of the date of this order. The Attorney General need not undertake to defend or indemnify these individuals at this time. Rather, this order merely provides a means by which Fluty may name and properly serve these defendants, as instructed by the Second Circuit in *Valentin*.

The Attorney General's Office shall produce the information specified above by mail (addressed to Pro Se Litigation Unit, United States District Court, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York 14202) within 14 days of the date of this order. Upon receipt of this information, the Clerk of the Court shall amend the caption of this action to reflect the full names of these defendants and shall cause the United States Marshals Service to serve copies of the summons, the complaint, and this order upon these defendants without Fluty's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in his favor. Should the *Valentin* response include personally identifiable information such as a home address, that contact information shall be given to the Marshals Service solely for the purpose of effecting service, and that information shall otherwise remain confidential; and it is further

ORDERED that the New York State Attorney General shall respond to the motion for an emergency injunction, Docket Item 3, within 14 days of the date of this order; and it is further

ORDERED that the Clerk of the Court shall forward a copy of this order, the complaint, Docket Item 1, and the motion for an emergency injunction, Docket Item 3, by email to Christopher L. Boyd, Assistant Attorney General in Charge, Buffalo Regional Office, at Christopher.Boyd@ag.ny.gov; and it is further

ORDERED that upon service, pursuant to 42 U.S.C. § 1997e(g)(2), Jane/John Doe Commissioner of Mental Health for the New York State Department of Corrections and Community Supervision and Jane Doe Attica mental health provider shall answer or

respond to those portions of the complaint arising from Fluty's confinement at Attica; and it is further

ORDERED that Fluty shall notify the Court in writing if his address changes. The Court may dismiss the action if Fluty fails to do so.

SO ORDERED.

Dated: January 9, 2026
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE