UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MATTHEW W. FLUTY,

                                    Plaintiff,

                                                              9:26-CV-0204
        v.                                                    (MAD/PJE)


COXSACKIE CORRECTIONAL
FACILITY SUPERINTENDENT, et al.,

                                    Defendants.

_____

APPEARANCES:

MATTHEW W. FLUTY
Plaintiff, pro se
23-B-4874
Attica Correctional Facility
Box 149
Attica, NY 14011


MAE A. D'AGOSTINO
United States District Judge


**DECISION and ORDER**

I.      **INTRODUCTION**

        Plaintiff Matthew W. Fluty commenced this action in the Western District of New York

by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"),

together with an application to proceed in forma pauperis ("IFP") and a motion for a

preliminary injunction.  Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"); Dkt. No. 3

("Motion for Injunctive Relief").  By Decision and Order entered on January 9, 2026, the

Honorable Lawrence J. Vilardo conditionally granted the IFP Application, dismissed certain of

1

plaintiff's claims, and severed and conditionally transferred certain of plaintiff's claims, including those arising from his confinement at Rensselaer County Jail and Coxsackie Correctional Facility, which were conditionally transferred to the Northern District of New York. Dkt. No. 5 ("Initial Screening Order").[1] Because plaintiff's IFP Application was deficient, Judge Vilardo afforded plaintiff twenty-one (21) days to submit one of the following if he wished to proceed with his action: (1) the required certification of his inmate trust fund account (or the institutional equivalent), or (2) the $350.00 filing fee and the $55.00 administrative fee ($405.00 total). *Id*. at 18.

Thereafter, plaintiff provided the required certification, and Judge Vilardo issued a Text Order wherein he granted plaintiff's IFP Application and directed the transfer of plaintiff's severed claims to the appropriate courts. *See* Dkt. No. 9; Dkt. No. 11; Dkt. No. 12 ("Text Order Directing Transfer"). On February 10, 2026, a portion of this action was transferred to the Northern District of New York in accordance with the Initial Screening Order and Text Order Directing Transfer. *See* Dkt. No. 13.

By Decision and Order entered on March 12, 2026, this Court denied the Motion for Injunctive Relief as duplicative of the same motion pending in the Western District of New York, and following review of the transferred portion of the complaint, dismissed plaintiff's Section 1983 claims based on wrongdoing at Rensselaer County Jail and Coxsackie Correctional Facility without prejudice for failure to state a claim upon which relief may be granted, and afforded him thirty days to file an amended complaint. Dkt. No. 14 ("March 2026 Order").

---

[1] Judge Vilardo retained plaintiff's claims arising out of his confinement at Attica Correctional Facility, and conditionally transferred plaintiff's claims arising out of his confinement at Green Haven Correctional Facility to the Southern District of New York. *See* Initial Screening Order at 11-14.

Presently before the Court is plaintiff's amended complaint.  *See* Dkt. No. 19 ("Am. Compl.").

## II.    SUFFICIENCY OF THE AMENDED COMPLAINT

### A.    The Complaint and March 2026 Order

In the complaint, plaintiff asserted claims based on alleged wrongdoing during his incarceration at Rensselaer County Jail and Coxsackie Correctional Facility.  *See* Compl. More specifically, plaintiff alleged that during his incarceration at Rensselaer County Jail in 2022, he was wrongfully placed in restrictive confinement on two occasions, denied access to prescribed mental health medication, and assaulted more than once by several corrections officials not named as defendants.  *See generally*, Compl.  The complaint also alleged that in 2024, plaintiff was wrongfully housed in restrictive confinement at Coxsackie Correctional Facility for approximately 75 days and subjected to inhumane housing conditions during this time.  *Id*.  The complaint named only the following officials from Coxsackie Correctional Facility as defendants: (1) Superintendent Jane Doe; (2) Area Sergeants; and (3) Correctional Officers.  *Id*. at 1-2.

The complaint was liberally construed to assert the following Section 1983 claims against the named defendants from Coxsackie Correctional Facility: (1) Eighth Amendment medical indifference claims; (2) Eighth Amendment conditions-of-confinement claims; and (3) Fourteenth Amendment disciplinary due process claims.  *See* March 2026 Order at 5-6.

Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), plaintiff's Section 1983 claims were dismissed without prejudice and with leave to renew.  *Id*. at 7-12.

**B.     Review of the Amended Complaint**

Because plaintiff is proceeding in forma pauperis and is an inmate suing one or more government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the Initial Screening Order and it will not be restated herein.  *See* Initial Screening Order at 2-4.

The amended complaint is materially similar to, albeit more detailed than, the original complaint, except that the pleading names several officials employed at Rensselaer County Jail as defendants, and includes additional allegations of wrongdoing arising out of plaintiff's incarceration at this facility.  The following facts are set forth as alleged in the amended complaint.

Throughout plaintiff's incarceration at Rensselaer County Jail, he had "a cyst on his tailbone that was infected and required a medical shower daily to keep [it] clean[.]"  Am. Compl. at 3.  Defendant Corrections Officer Peiestra denied plaintiff a shower "every morning inmates were required to request a shower . . . to irritate [him]."  *Id*.

Between October and November, while plaintiff was housed at Rensselaer County Jail, he was "subjected to 16 days of confinement without [a] shower or clean clothes."  Am. Compl. at 3.[2]  During this time, plaintiff was also "denied the correct medication and given the wrong meds despite grievances."  *Id*.  Defendant Corrections Officer Dwyer was aware of plaintiff's need for "hospital care" and failed to assist him.  *Id*.

---

[2]  The amended complaint notes the year as "2021," with a line strike through "2022."  Am. Compl. at 3.  The original complaint, however, identified the year as 2022.  *See* Compl. at 9.  In addition, the amended complaint later discusses events that occurred in early 2023.  *See* Am. Compl. at 4-5.  Thus, the Court will assume, for purposes of this Decision and Order only, that these events occurred in the year 2022.

On January 2, 2023, plaintiff was involved in an incident with a "mentally ill inmate[.]" Am. Compl. at 4. Thereafter, defendant Corrections Officer Biette "dragged [plaintiff] into the shower and bashed [his] head off the steel shower stall" while defendant Corrections Sergeant Orecki looked on. *Id*. Eventually, defendant Orecki told defendant Biette "that's enough[.]" *Id*.

Roughly two days later, an unidentified number of "John Doe" corrections officials took away plaintiff's shoes and clothes and "left [him] naked in a suicide smock." Am. Compl. at 1, 4. Plaintiff was also assaulted by an unidentified number of "John Doe" officials around this time. *Id*. at 4-5.

In November 2023, plaintiff was transferred to Green Haven Correctional Facility. Am. Compl. at 7. Roughly three months later, plaintiff was transferred to Coxsackie Correctional Facility. *Id*.

Between February 11 and May 1, 2024, plaintiff was "keeplocked in a cell" without a change of clothes and forced to take cold showers surrounded by black mold. Am. Compl. at 7. An unidentified number of "John Doe" corrections officials were responsible for plaintiff's cell conditions at Coxsackie Correctional Facility. *Id*. at 1, 7-8.

Liberally construed, the amended complaint asserts the following claims against the named defendants: (1) Eighth Amendment excessive force and failure-to-intervene claims against defendants Biette, Orecki, and Rensselaer County Jail "John Doe" Corrections Officers; (2) an Eighth Amendment medical indifference claim against defendant Dwyer; and

(3) Eighth Amendment conditions-of-confinement claims against defendants Peiestra and Coxsackie Correctional Facility "John Doe" Corrections Officers.[3]

Plaintiff seeks money damages.  Am. Compl. at 13.  For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

**C.    Analysis**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *German v. Fed. Home Loan Mortg. Corp*., 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)).  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

**1.  Section 1983 Claims Against "Doe" Officials**

Plaintiff was advised in the March 2026 Order that a pleading "must allege facts sufficient to plausibly suggest that each 'Doe' defendant was personally involved in the alleged constitutional deprivations."  *See* March 2026 Order at 7.  Nonetheless, the amended complaint once again asserts Section 1983 claims against an unidentified number of "Doe"

---

[3] Insofar as the amended complaint alleges that plaintiff was "keeplocked in a cell" between February 11 and May 1, 2024, the pleading does not allege why plaintiff was held in restrictive confinement or identify the official(s) responsible for plaintiff's keeplock confinement.  Thus, the Court does not construe the amended complaint to assert a cognizable due process claim against any named defendant related to this alleged restrictive confinement.

officials employed at Rensselaer County Jail and Coxsackie Correctional Facility, without any details sufficient to indicate (1) how and when each official violated plaintiff's federal rights, (2) how that official may be identified for service, or (3) the nature of plaintiff's interactions with each "Doe" official.  *See, e.g., Wright v. Orleans Cnty.*, No. 14-CV-0622, 2015 WL 5316410, at *13 (W.D.N.Y. Sept. 10, 2015) (noting in a Section 1983 case that "[g]roup pleading is insufficient for purposes of Rule 8(a)(2) [of the FRCP] which requires a short and plain statement of the claim showing that the pleader is entitled to relief" (citation and quotation marks omitted)); *Holmes v. Allstate Corp.*, No. 11-CV-1543, 2012 WL 627238, at *7, *22 (S.D.N.Y. Jan. 27, 2012) ("[FRCP] 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it."); *Traore v. Rikers Island C-95 & C-76*, No. 22-CV-1432, 2022 WL 1556946, at *4-5 (S.D.N.Y. May 16, 2022) ("Plaintiff names 'Rikers Island C95 and C76 medical staff and correctional officers.' The 'medical staff' is not considered a person under Section 1983. . . . Also, Rikers Island is not a 'person' within the meaning of Section 1983. . . . The Court therefore dismisses Plaintiff's claims against 'Rikers Island C95 and C76 medical staff for failure to state a claim on which relief may be granted.'"); *McCall v. Elmira Corr. Fac. Med. Staff*, No. 14-CV-0258, 2014 WL 1747218, at *2 (W.D.N.Y. Apr. 29, 2014) (dismissing claims against correctional facility "medical staff" and providing differing reasons for why "[t]he medical staff at Elmira [Correctional Facility] is not a proper defendant").

Accordingly, and for the reasons set forth in the March 2026 Order, plaintiff's Section 1983 claims against "Doe" officials employed at Rensselaer County Jail and Coxsackie Correctional Facility are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 2. Excessive Force and Failure-to-Intervene Claims Against Biette and Orecki

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981).

The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith; and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Law enforcement officials, including prison officials, can also be held liable under Section 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *see also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (prison official's Eighth Amendment duty to take reasonable measures to

guarantee the safety of inmates in their custody includes a duty to protect inmates from harm threatened by other officers).

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's excessive force and failure-to-intervene claims against defendants Biette and Orecki survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 3. Medical Indifference Claim

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle*, 429 U.S. at 104. The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id.*; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing, *inter alia*, *Estelle*). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104).

"First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). Addressing the

9

objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). To determine whether inadequate care is "sufficiently serious," a court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). "Where a plaintiff alleges that inadequate care was provided—instead of alleging a failure to provide any treatment—the inquiry focuses on 'the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract.'" *Revels v. Corr. Med. Care, Inc.*, No. 9:17-CV-0088 (MAD/TWD), 2018 WL 1578157, at *4 (N.D.N.Y. Mar. 28, 2018) (quoting *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003)); *see also Ray v. Zamilus*, No. 13-CV-2201, 2017 WL 4329722, *8 (S.D.N.Y. Sept. 27, 2017) (finding that where a "plaintiff suffered from a delay in treatment, rather than a complete lack of treatment, the objective element must be satisfied by harm that resulted from the delay").

"Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'").

10

Non-medical personnel may be held liable for deliberate indifference to medical needs where a plaintiff demonstrates that the prison personnel intentionally denied or delayed access to medical care or intentionally interfered with medical treatment once it was prescribed.  *See Banks v. No. 8932 Corr. Officer*, No. 11-CV-8359, 2013 WL 673883, at *4 (S.D.N.Y. Feb. 25, 2013) ("A prison guard's deliberate indifference to a serious medical need of a prisoner means intentionally denying or delaying access to medical care or intentionally interfering with medical treatment once it was prescribed."); *see also Estelle*, 429 U.S. at 104-05 (noting that deliberate indifference may be manifested when prison guards intentionally deny or delay access to medical care).

In this case, the amended complaint alleges that plaintiff was "denied the correct medication and given the wrong meds" while in keeplock confinement for sixteen days at Rensselaer County Jail, and defendant Corrections Officer Dwyer was aware of plaintiff's need for "hospital care" and failed to assist him during this time.  Am. Compl. at 3.

As an initial matter, the only medical condition identified in the pleading is an infected cyst on plaintiff's tailbone, which allegedly required daily cleaning.  *See* Am. Compl. at 3.  The amended complaint does not allege (1) what daily medication plaintiff was prescribed, (2) the nature of plaintiff's condition that required this medication, (3) the medication that plaintiff received in place of his prescribed medication, or (4) how plaintiff's condition worsened, if at all, as a result of allegedly receiving the wrong medication.  Moreover, the amended complaint does not allege why plaintiff was in need of "hospital care," let alone explain how or when defendant Dwyer may have become aware of this need.  Indeed, the pleading does not include any details regarding the nature of plaintiff's interactions with defendant Dwyer. Thus, the Court has no basis to plausibly infer from the allegations in the amended complaint

either that plaintiff was suffering from an objectively serious medical condition for which he was not receiving adequate treatment, or that defendant Dwyer deprived plaintiff of access to adequate medical treatment out of deliberate indifference to his well-being.

Accordingly, plaintiff's medical indifference claim against defendant Dwyer is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 4. Conditions-of-Confinement Claim Against Peiestra

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). Although it is clear that the Eighth Amendment "does not mandate comfortable prisons," it does not permit inhumane treatment of those in custody. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) and *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). Prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480, and (2) the defendants acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991).

12

"Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002).  With respect to the "subjective" requirement, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, the amended complaint alleges that defendant Peiestra denied plaintiff access to a shower "every morning inmates were required to request a shower . . . to irritate [him]." Am. Compl. at 3.[4]

As an initial matter, several courts have held that periodic shower deprivations do not rise to the level of an objectively serious deprivation of a human need.  *See, e.g., George v. McGinnis*, No. 05-CV-84, 2008 WL 4412109, at *4-5 (W.D.N.Y. Sept. 23, 2008) (deprivation of showers for thirteen days does not satisfy the objective element of an Eighth Amendment claim); *Dolberry v. Levine*, 567 F. Supp. 2d 413, 417 (W.D.N.Y. 2008) (finding that denial  of showers for several weeks does not amount to an Eighth Amendment violation); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) (dismissing Eighth Amendment claims as insufficient under the objective test because "a two-week suspension of shower privileges does not suffice as a denial of 'basic hygienic needs'") (citation omitted); *Waring v. Meachum*, 175 F. Supp. 2d 230, 242 (D. Conn. 2001) ("[T]he prohibition of showers and failure to

---

[4] Because the amended complaint is devoid of allegations which plausibly suggest that defendant Peiestra was aware of plaintiff's medical condition and need for a daily shower to address the potential spread of plaintiff's alleged infection, the Court does not construe the pleading to assert a medical indifference claim against this official.

13

provide a change of clothing during the seven day lockdown period does not demonstrate that plaintiffs were deprived of a minimum civilized level of life's necessities").  Moreover, the amended complaint does not allege that inmates were required to request a shower every morning in order to receive a shower or could only receive showers in the morning.  Nor does the amended complaint allege that defendant Peiestra worked every morning that plaintiff was confined at Rensselaer County Jail.  Thus, the Court is unable to plausibly infer that defendant Peiestra prevented plaintiff from showering for a period of time that might be considered objectively serious.  *See Jabot v. MHU Counselor Roszel*, No. 14-CV-3951, 2016 WL 6996173, at *5 (S.D.N.Y. Nov. 29, 2016) ("The denial of a shower on an unspecified number of occasions fails to state a plausible claim of inhumane conditions of confinement because it is too vague and cursory to withstand a motion to dismiss.").

Accordingly, plaintiff's conditions-of-confinement claim against defendant Peiestra is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## III.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint (Dkt. No. 19) is accepted for filing and will supersede and replace the original complaint as the operative pleading; and it is further

**ORDERED** that the Clerk shall add the following officials to the docket at defendants: (1) Rensselaer County Jail Corrections Officer Peiestra; (2) Rensselaer County Jail Corrections Officer Dwyer; (3) Rensselaer County Jail Corrections Officer Biette; (4) Rensselaer County Jail Corrections Sergeant Orecki; and (5) Rensselaer County Jail "John Doe" corrections officials; and it is further

**ORDERED** that plaintiff's excessive force and failure-to-intervene claims against defendants Biette and Orecki **SURVIVE sua sponte review** and require a response; and it is further

**ORDERED** that plaintiff's remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the Clerk shall issue summonses for defendants Biette and Orecki and forward them, along with two copies of the amended complaint, to the United States Marshal for service upon these officials; and it is further

**ORDERED** that upon the completion of service, a response to plaintiff's amended complaint be filed by defendants Biette and Orecki, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED**.

Dated:  July 29, 2026
        Albany, New York

Mae A. D'Agostino
U.S. District Judge